## SAMUEL SOUTHWORTH *against* JOHN LATHROP.

MOTION for a new trial.

This was a petition in chancery, brought to the Superior Court. It was alleged in the petition, that on the 17th day of *November*, 1802, the petitioner, together with *Barzillai Swift*, entered into a contract with the *Windham and Mans*-ers, during a limited period, and to indemnify the Turnpike Company against any loss or damage arising from the deficiency of the road. The obligations of this contract were, by an agreement between *A.* and *B.*, transferred to *B.*; and a subsequent contract was entered into between *B.* and *C.*, whereby *C.* agreed to keep the road in repair, to the acceptance of the commissioners. *C.*, fraudulently, obtained possession of such contract, and suppressed it, and neglected to keep the road in repair. The Turnpike Company was sued, and judgment rendered against them, for an injury sustained on account of the deficiency of the road, which judgment *A.* was compelled to satisfy. *B.*, being insolvent, and unable to perform his agreement with *A.*, assigned to him his contract with *C.* A petition in chancery having been brought by *A.* against *C.*, it was held, that parol evidence was admissible, to prove, that the road was not kept in repair, and that in consequence thereof, the injury was sustained, for which the Turnpike Company had been sued; and that the testimony of a commissioner on the road, was admissible to prove such facts.

Held, also, that *C.* was liable to pay the damages sustained in consequence of the non-performance of his contract, although it contained no express clause of indemnity.

After the granting of the prayer of a petition in chancery, further evidence may be admitted, on a hearing upon the bill in form.

*A.* entered into a contract to maintain and repair a turnpike road, to the acceptance of the commission-

June, 1812.

SOUTHWORTH
v.
LATHROP.

*field Turnpike Company*, whereby, in consideration of the net avails of the south toll gate, situated on the road of the company in *Mansfield*, they became jointly obligated to maintain and repair such road, excepting certain bridges, in such manner as should be approved by the commissioners thereon, for the period of ten years, from the 10th day of *September*, 1802, and at all times within such period, to indemnify, and save the company harmless from all losses and expenses arising from the deficiency of the road; that afterwards, on or about the first day of *May*, 1804, *Swift* and the petitioner, agreed to make partition of the road between them, and thereupon, in consideration of an equal moiety of the avails of the south toll gate, the petitioner bound himself to *Swift*, to maintain and keep in repair, that part of the road situated between the south toll gate, and the house of *Joshua Hyde*, in *Franklin*, being the southern section of the road, during the remainder of the period of ten years before mentioned; that on the third day of *July*, 1804, the petitioner contracted with *Eleazer Huntington*, jun. and *Andrew Palmer* for the maintaining and repairing of this section of the road, and assigned to them the one half of the avails of the south toll gate; that soon afterwards, *Palmer* assigned to *Huntington*, his right in the avails of the south toll gate, and thereupon *Huntington* agreed to maintain and repair the southern section of the road; the several contracts last mentioned, being all founded on the basis of the original contract with the Turnpike Company; that on the 30th day of *May*, 1808, *Huntington* entered into an agreement with the defendant, for the purpose of repairing and maintaining the southern section of the road, and in pursuance thereof, *Huntington* assigned to him, one half of the avails of the south toll gate, and also, executed and delivered to him, his promissory note for the sum of 180 dollars, payable by the first day of *April*, 1809, with interest; and that in consideration thereof, the defendant executed and delivered to *Huntington*, a certain writing or bond, whereby he became obligated to maintain and repair the southern section of the road, between the south toll gate in *Mansfield*, to the house of *Joshua Hyde* in *Frank-*

*lin,* from that time, until the 10th day of *September,* 1812, upon the terms, stipulations and conditions contained in the original agreement with the Turnpike Company. It was also alleged, that upon the execution and delivery of the last mentioned contract, it was agreed between *Huntington* and the defendant, that the defendant should receive the writing or contract, and lodge it in the hands of one *Jabez Dyer,* for safe custody, for the mutual benefit of both parties; that the defendant received the contract, and promised and undertook to lodge it in the hands of *Dyer* immediately, but that he neglected and refused so to do, and suppressed, and kept it concealed in his own hands; that neither the petitioner nor *Huntington,* could shew the precise terms and import of such contract; that the defendant, from the date of such contract, had received the one half of the avails of the south toll gate; that *Huntington* and *Palmer,* for more than three years, had been insolvent, and were wholly unable to maintain and repair the road, or to indemnify the petitioner for any damage which he might sustain in consequence of any defect therein; that on the 16th day of *May,* 1809, the petitioner procured from *Huntington,* a valid assignment, in writing, of the contract between him and the defendant, of which the defendant had due notice, yet, that the defendant refused to deliver such contract, and kept the same secreted in his own possession. It was also, further alleged, that the defendant had wholly neglected to keep the road in repair, and that large sums of money were necessary to repair the same; that the Turnpike Company had been sued, and judgment rendered against them, for a large amount, on account of damages sustained in consequence of the defendant's neglect to keep the road in repair, which, together with the expenses of such suit, the petitioner had been compelled to pay, and that the petitioner was without remedy at law, &c.

The petitioner prayed for a decree against the defendant, to compel him to deliver up the writing or contract entered into between him and *Huntington,* and to pay the amount of the monies expended, and the damage sustained by the petitioner, in consequence of the deficiency of the road, and to

June, 1812.

SOUTHWORTH
*v.*
LATHROP.

enjoin him to keep the road in repair. The defendant, in his plea, denied the truth of the facts stated in the petition, upon which, issue was joined. The court found the contract entered into between the defendant and *Huntington*, to be expressed in the following manner, *viz.* " This agreement made by and between *Eleazer Huntington* of the one party, and *John Lathrop* of the other party, witnesseth, that the said *John Lathrop* agrees to repair the turnpike road from the gate of *Simeon Woodworth* in *Mansfield*, to *Joshua Hyde's* in *Franklin*, and keep the same in repair, to the acceptance of the committee appointed by the General Assembly, to inspect and view said road, from the day of the date of this instrument, until the first day of *September*, 1812 : and then deliver up said road in good and sufficient repair, to the acceptance of such committee as are, or shall be appointed, to view and examine the same ; in consideration of which, the said *Huntington* assigns over to him, the said *Lathrop*, the one half of the net avails of the toll which will be collected at the gate by *Simeon Woodworth's*, during said term : All which the said *John Lathrop* promises faithfully to perform ; and in default of which, the said *John Lathrop* promises to pay to the said *Eleazer Huntington*, the sum of one thousand dollars ; and if the said *Lathrop* does faithfully perform his part of this contract, then as to the above sum of one thousand dollars it is to be null and void ; otherwise, to remain in full force and virtue. In witness whereof, we have hereunto set our hands, this 30th day of *May*, 1808.

*Eleazer Huntington,*
*John Lathrop.*"

All the other facts, as stated in the petition, were found to be true : Whereupon, the court decreed, that the defendant should pay to the petitioner the sum of 243 dollars, being the amount of the judgment rendered against the Turnpike Company ; and that within a specified time, he should deliver into the hands of *Jabez Dyer*, the writing or contract entered into between him and *Huntington* on the 30th day of *May*, 1808.

On the trial, it was proved, that at the time when the defendant contracted with *Huntington*, to keep the road in repair, a part of the road at *Great Hill*, so called, in *Franklin*, was much out of repair, in consequence whereof, the injury was sustained, for which the Turnpike Company were sued. It was also proved, that at the time of the assignment to the petitioner, of the contract entered into between *Huntington* and the defendant, *Huntington* was insolvent, and was justly indebted to the defendant in the sum of about 200 dollars. And for the purpose of shewing, that the defendant ought not to be compelled to deliver up the writing, or contract, made between him and *Huntington*, or to pay the amount of the judgment recovered against the Turnpike Company, the defendant offered to prove, by parol, that when the last mentioned contract was executed, a further agreement was made between them, whereby *Huntington* undertook to repair the road at *Great Hill ;* and that *Huntington* had wholly neglected to perform this agreement ; to the admission of which evidence, the petitioner objected, and the court adjudged, that it was inadmissible.    After the issue in the cause had been found in favour of the petitioner, and on the hearing upon the bill in form, the defendant objected to that part of the bill, which provided, that the defendant should pay the amount of the judgment recovered against the Turnpike Company, on the ground of the performance of his contract with *Huntington ;* and contended, that it was proved on the trial of the merits of the cause, that at the time when such contract was made, the road was out of repair, and that the south gate was open, by order of the commissioners ; that the defendant immediately afterwards repaired the road, to the acceptance of the commissioners; and that, by their order, the gate was shut on the 13th day of *July*, 1808, and had remained shut ever since.   Upon these suggestions, the petitioner offered to prove, by the testimony of General *Gordon*, a commissioner on the road, and other parol testimony, that the road had not been kept in repair, to the acceptance of the commissioners; and that the injury for which the Turnpike Company had been sued, happened in consequence of

*June, 1812.*

SOUTHWORTH
*v.*
LATHROP.

June, 1812.

SOUTHWORTH
v.
LATHROP.

a defect in the road, at *Great Hill*, so called. The defendant objected to the admission of this testimony ; but the court overruled the objection. The defendant moved for a new trial, on the ground that the court erred, in rejecting the testimony offered by him ; and also, in admitting that offered by the petitioner : And the questions arising upon this motion, were reserved for the consideration of the nine Judges.

*W. Perkins*, argued in support of the motion.

*Goddard*, contra.

EDMOND, J.   By this motion, two questions are presented to the consideration of the court, *viz.* Whether, after the court had found the issue in favour of the petitioner, and determined to grant the prayer of the petition, and a bill in form thereon was offered, any further testimony was admissible ? and if admissible at that time, whether the testimony of General *Gordon*, a commissioner on the road, and other parol testimony, was admissible to prove that the road was not kept in repair to the acceptance of the commissioners ? and that the injury to *Warren's* property was in consequence of a break in the road on *Great Hill ?*

In answer to the first question, which respects only the *time* of offering the testimony, I am of opinion, that upon the hearing, on a bill in form, testimony may be admitted, and with as much propriety as on a hearing in damages. Until the bill in form is passed, the case is *sub judice*, and by the court's saying, the petition is granted, nothing more is intended than that such and so many of the facts stated in the petition are proved, as to entitle the petitioner, in the opinion of the court, to some relief : what that relief shall be, and to what extent, remains to be settled on hearing, when the bill in form is presented. The enquiry, therefore, was proper in point of time.

In relation to the other question, it being stated in the petition, that the petitioner, for want of knowledge respecting the obligatory writing, executed and delivered by the

respondent, and in the hands of the respondent, he was unable to describe the same, so as to maintain a suit at law thereon, on hearing the parties on the petition, the court found what that writing or agreement was, namely, that the respondent, *Lathrop,* agreed to repair the turnpike road from the gate of *Simeon Woodworth,* in *Mansfield,* to *Joshua Hyde's,* in *Franklin,* and keep the same in repair, to the acceptance of the commissioners appointed by the General Assembly to inspect and view said road, &c. The court having found this agreement, it became essential to the passing of a decree, that should do justice between the parties, to ascertain whether the respondent had failed to perform this contract; for the respondent having agreed to "*repair the road, and keep it in repair,*" if he had not done it, it followed, that he was liable for the damage done to *Warren's* property, for want of necessary repair; for although the contract found, contained no clause of indemnity, yet the undertaking was absolute; a duty was thereby created, and a neglect or non-performance of this duty, draws after it the consequence of liability to damages, as much as if the contract had contained express words of indemnity. Whether the road, then, was put in repair, and kept in repair to the acceptance of the commissioners, were questions of fact, to be ascertained by the testimony of the commissioners, or other testimony, in the same manner, as any other fact is to be ascertained in a court of law: And the testimony of *Gordon,* one of the commissioners, was better evidence of these facts than could be drawn from any ministerial acts of the commissioners: And whether the injury to *Warren's* property, was owing to the state of the road, was necessary to be known, in order to determine whether the respondent ought to be subjected to those damages.

For these reasons, I am of opinion that a new trial ought not to be granted.

All the other Judges concurred in this opinion.

New trial not to be granted.